ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK



Dana Longstreet

CV 21 - 4355

-against-

KOMITEE, J.

Queens Defenders
Lori Zeno

BLOOM, M.J.

Complaint for Employment Discrimination Case
No. _____
(to be filled in by the Clerk's Office)

Jury Trial: ☑ Yes ☐ No (check one)

ORIGINAL

The Parties to This Complaint

A. The Plaintiff(s) Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

> Dana Longstreet
> 320 South Harrison Street, Apt 6L
> East Orange, Essex County
> NJ 07018
> 973-981-1555
> danalongstreet@gmail.com

B. The Defendant(s) Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known). Attach additional pages if needed.

Defendant No. 1

> Queens Defenders
> 118-21 Queens Boulevard
> Forest Hills, Queens County
> NY 11375
> 718-261-3047

Defendant No. 2

> Lori Zeno
> Executive Director and Founder, Queens Defenders
> 118-21 Queens Boulevard
> Forest Hills, Queens County
> NY, 11375
> 917-653-7505
> lzeno@queendersdefenders.org

C. Place of Employment The address at which I sought employment or was employed by the defendant(s) is:

> Queens Defenders
> 118-21 Queens Blvd
> Forest Hills, Queens County
> New York, 11375
> 718-261-3047

II. Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to (check all that apply):

☐ Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin). (Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)

☐ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634. (Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)

☒ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117. (Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)

4 ☐ Other federal law (specify the federal law):
_____

☐ Relevant state law (specify, if known):
_____

☐ Relevant city or county law (specify, if known):
_____

III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

The EEOC Complaint filed on July 21, 2020 and the Amendment filed on September 29, 2020, as well as the EEOC Right to Sue Letter, are attached.

The discriminatory conduct of which I complain in this action includes (check all that apply):

☐ Failure to hire me.
☐ Termination of my employment.
☐ Failure to promote me.
☒ Failure to accommodate my disability.
☐ Unequal terms and conditions of my employment.
☒ Retaliation
☐ Other acts (specify): _____

(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)

It is my best recollection that the alleged discriminatory acts occurred on date(s) Weekly and sometimes daily from January 6, 20,20 to September 29, 2020.

I believe that defendant(s) (check one):
☐ is/are still committing these acts against me.
☒ is/are not still committing these acts against me.

D. Defendant(s) discriminated against me based on my (check all that apply and explain):
☐ race _____
☐ color_____
☐ gender/sex _____
☐ religion _____
☐ national origin _____
☐ age. My year of birth is _____. (Give your year of birth only if you are asserting a claim of age discrimination.)
☒ disability or perceived disabilities: Major Depressive Disorder, Generalized Anxiety Disorder, Attention Deficit Disorder, Hashimoto's Disease

E. The facts of my case are as follows. Attach additional pages if needed.

Queens Defenders discriminated against me on the basis of my disabilities and Lori Zeno ("Zeno") retaliated against me for requesting a reasonable accommodation.

I suffer from disabilities including major depressive disorder ("MDD"); Attention-Deficit Disorder ("ADD"); and generalized anxiety disorder ("GAD"). I was also diagnosed with Hashimoto's thyroiditis in 2019. In December 2019, my psychiatrist recommended I be permitted to work at home two or three days a week, citing protections provided by the Americans with Disabilities Act. I provided Zeno with his written recommendation in December 2019. I met with Zeno, Executive Director, Hettie Powell, Managing Director, and Patricia McHugh, Human Resources Director, on January 6, 2020 to discuss this request, which was denied.

Beginning January 6, 2020, Queens Defenders began to discriminate against me weekly and sometimes daily because of my actual and perceived disabilities, failed to reasonably accommodate me, and retaliated against me for my protected complaints. As set forth in the July 2020 Charge, QD discriminated against me on the basis of my disability and Lori Zeno ("Zeno") retaliated against me for requesting a reasonable accommodation.

Methods of discrimination and retalition included not inviting me to or notifying me of meetings I attended regularly before January 6, not providing information I needed to do my job despite my repeated requests for that information, talking about my ADA request and disparaging me to other employees in open areas, sending me disparaging emails laced with

I request that my attorney's fees to date ($11,287.50) plus the total cost to me of this court case be covered by the defendant.

VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

For Parties Without an Attorney: I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: August 2 , 2021

Signature of Plaintiff: Dana Longstreet

Printed Name of Plaintiff: DANA LONGSTREET

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| AGENCY | CHARGE NUMBER |
|---|---|
| FEPA ☐ | |
| EEOC ☒ | |

_____ and EEOC
State or local Agency, if any

| NAME (Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Dana Longstreet | 973-981-1555 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 320 South Harrison Street 6L, Est Orange NJ 07018 | | 02/10/1959 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| Queens Defenders | Approximately 200 | 718-261-3047 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | 118-21 Queens Boulevard, Forest Hills, NY 11375 | Queens |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

CAUSE OF DISCRIMINATION (Check appropriate box(es))

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ AGE
☒ RETALIATION  ☒ NATIONAL ORIGIN  ☐ DISABILITY  ☐ OTHER (Specify)

| DATE DISCRIMINATION TOOK PLACE | |
|---|---|
| EARLIEST (ADEA/EPA) | LATEST (ALL) |
| January 2020 | June 2020 |

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

See attached affidavit.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the foregoing is true and correct.

| NOTARY – (When necessary for State and Local Requirements) | |
|---|---|
| I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. | |
| SIGNATURE OF COMPLAINANT | |
| SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year) | |

Date: July 20, 2020     Charging Party (Signature)

NOTARY PUBLIC STATE OF NEW JERSEY
KATHLEEN C. RILEY
My Commission Expires
KCR 07-30-2020

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DANA LONGSTREET,

                        Claimant,                                 Charge No.

      -against-

QUEENS DEFENDERS,

                        Respondent.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

STATE OF NEW YORK    )
                       : ss.:
COUNTY OF NEW YORK  )

          DANA LONGSTREET, being duly sworn, deposes and says:

          1.      I am the charging party in this matter and I submit this affidavit in support of my charge of discrimination. I believe that my employer, Queens Defenders ("QD"), formerly Queens Law Associates ("QLA"), discriminated against me because of my actual and perceived disabilities and retaliated against me for my protected complaints.[1]

          2.      I suffer from numerous disabilities, including arthritis in my hands and knees; carpal tunnel syndrome in both wrists; major depressive disorder ("MDD"); Attention-Deficit Disorder ("ADD"); and generalized anxiety disorder ("GAD"). I also have a thyroid condition for which I have been seeking treatment and a more specific diagnosis.

          3.      I live in East Orange, New Jersey.

          4.      I hold a Bachelor of Science from University of California – Berkeley in Conservation and Resource Studies and a Master of Social Work from Rutgers University, as well

---

[1] In January 2020, Queens Law Associates undertook a "rebrand," changing its name to Queens Defenders.

as a Post-Graduate Certificate from Harvard University. I have 35 years of experience in marketing, communications, and social work. Prior to starting my current position at QD, I worked at the New York City Housing Authority ("NYCHA"), where I held the title of Deputy Director for Strategic Communications. I have additionally performed communications consulting work for clients including the Hetrick-Martin Institute, Susan G. Komen for the Cure Greater New York, CONNECT NYC, New Jersey Performing Arts Center, UNICEF, Planned Parenthood NYC, and other organizations.

5.      In July 2019, I interviewed for the position of Director of Communications & Institutional Giving at QLA, where I met Hettie Powell, Managing Director; Ken Deane, Senior Attorney, Homicide; Anthony Licari, Chief Information Officer and Chief Financial Officer; Brandon Jeffries, Director of Social Services; and Lori Zeno, Executive Director. During the interview, Zeno mentioned the possibility of working from home and told me that many QLA employees work from home.

6.      On August 2, 2019, QLA formally offered me the position of Director of Communications & Institutional Giving. My offer letter stated that Lori Zeno, Executive Director of QLA, would be my supervisor. I accepted the position on August 6, 2019.

7.      I started working at QLA on September 5, 2019. Patricia McHugh, QLA's Human Resources Director, told me that I would be reporting to Brian Schatz, the new Director of Development, who would be starting the following week.

8.      On October 3, 2019, I disclosed my disabilities to McHugh. I specifically informed McHugh of my arthritis, carpal tunnel, MDD, ADHD, and GAD.

9.     I quickly became concerned about the abusive work environment at QLA. Zeno routinely curses at and insults employees and clients. In addition, Zeno often expresses contempt for equal employment laws and members of protected classes. For example:

- On October 2, 2019, I attended a mandatory sexual harassment training along with 20 other senior staff, including Zeno and Schatz. During the training, the trainer said, "If you know two coworkers are having a relationship you should not gossip about it in the office." Zeno said, "What do you mean? Everyone knows everyone here is fucking everyone else and we all talk about it." Then she added, "They're fucking idiots. I always call people fucking idiots."

- On December 2, 2019, I attended a meeting with Schatz and Zeno where Zeno discussed two women attorneys who had just left QLA. Zeno shared that one of the women had been on maternity leave when she got an offer from a different organization with higher pay. Zeno explained that the attorney asked Zeno to match the offer, and Zeno said no. Zeno then said, "what kind of gratitude is that? I just paid for her maternity leave." Zeno expressed her intention to sue the woman attorney and possibly attempt to get her disbarred in retribution for leaving QLA after taking maternity leave. She said, "I am going to eviscerate her."

- On December 10, 2019, I attended the QLA holiday party. At the party, Zeno made remarks disparaging people with Down's syndrome and rape victims. Zeno and several QLA senior staff members had attended a fundraiser for an organization that provides services to people with Down's Syndrome. Zeno stated that most of the guests who were dancing were people with Down's syndrome and that "we all agreed it was the worst party we ever attended and we're not going to do that again."

3

She also described a staff drinking party in a karaoke bar where "everyone sang the refrain of the evening, 'Wendy gets the rape case, Wendy gets the rape case.'"

10.    However, prior to my accommodation request, Zeno praised my performance. For example, on December 3, 2019, Zeno made a last-minute request that I draft remarks for her for a fundraiser for Hour Children at which she would be speaking the next night. When she read them, she replied, "WOW!!!!! Can you just be my speech writer? This is fabulous."

### Zeno Reacts with Hostility Towards My Reasonable Accommodation Request

11.    On December 23, 2019, I submitted a request for a reasonable accommodation of working from home during part of the week to address my major depressive disorder. This accommodation was recommended by my psychiatrist.

12.    The same day, December 23, 2019, I fell in a restaurant, hitting my head on a brick column and sustaining a concussion. I began suffering extremely painful headaches and vertigo, and visited the emergency room twice as a result, once immediately after the concussion and once on December 31. I had also been dealing with my various health conditions and my thyroid issue prior to December and had attended numerous doctor's appointments to address those issues as well. Because I lived far from the office and was not able to work from home, each time I had a doctor's appointment or had to visit the ER, I was forced to miss an entire day of work.

13.    On January 6, 2020, I met with Zeno, McHugh, and Hettie Powell, Managing Director of QD, to discuss my reasonable accommodation request. At the meeting, I discussed my condition and requested reasonable accommodation of two or three days of working from home per week. Zeno asked what aspects of my job exacerbated my symptoms and I explained that the commute was the issue, not the job itself. Zeno asked if I engaged in self-care to manage my disabilities, such as going to the gym, taking vitamin supplements, mediating, power naps, and relocating to Queens. I explained that the length of my commute made it difficult to

4

engage in self-care and that moving to Queens was not realistic for me. Zeno told me she suffered

from depression and that medications do most of the work of addressing symptoms. Zeno also told

me that since we had discussed the commute at my interview in July, I should not have taken the

job if I knew the commute would be a problem, and falsely stated that I had told her during my

interview that I had worked in Queens before. I responded that this was untrue and I had never

worked in Queens previously; my commute to QLA the day of the interview had been an hour and

ten minutes. I explained I now knew that an hour and ten minutes was very unusual and that my

commute is usually much longer. Zeno called working at home a "supervision nightmare" and said

that sixty percent of my job was being QLA's "brand ambassador." Prior to this conversation,

neither Zeno nor any QLA employee had referred to me as a "brand ambassador." Zeno told me

that face-to-face contact was an essential part of my job, and I should be attending community

board meetings and building relationships with colleagues and community organizations and

stakeholders. Zeno instead proposed that I alter my work schedule to 8:30 a.m. to 3:30 p.m. to take

advantage of an easier morning commute and avoid rush hour and use my commuting time to

engage in self-care. She also suggested that I consider moving closer to Queens and offered to help

me plan my commute using NJ Transit schedules. Zeno also mentioned that it might be possible

to employ me part time, working three days a week.

        14.    At the end of the meeting, Zeno and I discussed a press release I had written

about the rebrand, changing the name of Queens Law Associates to Queens Defenders. Zeno

complained that the press release had not gone out yet, though I had given it to her for approval

two weeks prior. Zeno read my press release out loud in a mocking tone. As Zeno had previously

only praised my writing, I understood this behavior to reflect her feelings of hostility towards me

for having made the reasonable accommodation request.

15.     On January 7, 2020, I wrote an email to Zeno, McHugh, and Powell to confirm my understanding of the previous day's meeting. I specifically noted that no one at QD had previously told me my job included being a "brand ambassador." I attached my job description to this email, noting that "it does not mention any tasks related to brand ambassadorship and we have not discussed my role as QD's brand ambassador before" and asked for clarification about my job description.

16.     Several days later, on January 14, 2020, Zeno replied to my email from January 7, also copying Eric Lamm, QD's outside employment counsel, and Schatz. Zeno noted the length of my commute according to the MTA, stating that the ride on the E Train was 20 minutes from Penn Station to Jamaica. Zeno specifically implied that I was unwilling to engage in self-care strategies, stating "you indicated that you do not have the time to spend on those things" and repeated that I was "not going to move." Zeno wrote that my job was a newly created position, and that it was "created as a 5-day, full time position to be performed in the Jamaica office." Zeno told me that, "I believe this position, inherently, requires presence every working day, and cannot be supervised from home." Zeno reiterated her offer of a "flexible workday" but rejected other reasonable accommodations and those recommended by my psychiatrist. Zeno also said a part-time role was not an option.

17.     On January 17, 2020, I responded to Zeno. I reminded her that the reasonable accommodation request had come from my doctor. I also told Zeno that the information she had given me about the commute from Penn Station referred to the LIRR schedule, not the E Train, which was more expensive. I rejected her assertion that I was unwilling to engage in self-care, explaining that my commute depleted my energy and made evening activities challenging.

18.     On February 10, 2020, I wrote to Zeno, Powell, McHugh, and Schatz to accept the flexible work schedule Zeno had previously offered as a reasonable accommodation under the ADA. I did not receive a response.

<u>QD and Zeno Retaliate Against Me</u>

19.     Prior to the January 6, 2020 meeting to discuss my reasonable accommodation request, I had attended weekly meetings with Zeno and Schatz, as well as other senior staff meetings. Following that meeting, I was excluded from these weekly meetings and other senior staff meetings. I was also left out of calls related to my position. Additionally, QD employees, including Zeno, often failed to inform me of information relevant to my job, such as interview requests from reporters. Zeno always ignored me in group settings. In fact, Zeno did not speak to me again directly until the second week of March when I managed a video shoot which she participated in.

20.     In late February 2020, I was involved in a car accident in which my car was rear-ended. I suffered from whiplash and went to urgent care, where I was told my muscles and bones looked fine but that I might have an aortic aneurysm. As a result, I again had to miss a day of work.

21.     The last week in February, a coworker mentioned overhearing Zeno say that I had sued my last three employers and that Schatz had told her this. At my weekly meeting with Schatz on March 2, 2020, I asked him about whether he had said this to Zeno, and he denied it.

22.     The same day, having received no response to my February 10 email, I wrote to make sure Zeno and the others had seen my initial email. Zeno finally wrote back.

23.     In mid-March, New York City Mayor Bill de Blasio announced the closure of non-essential businesses due to the novel coronavirus, COVID-19; several days later, Governor Andrew Cuomo extended this to the entire state of New York, issuing a stay-at-home order for

7

non-essential workers, which included attorneys and law firms. QD closed its offices on March 13, 2020 and announced a work-from-home policy in response to these developments on March 16, 2020.

24.     On April 20, 2020, Schatz, my immediate supervisor, surprised me by presenting a performance review during our weekly phone meeting. Prior to making my reasonable accommodation request, I had only received positive feedback from Zeno and others at QD. In the performance appraisal, Schatz wrote that, "Dana exhibits a pattern of taking sick time to extend weekends and holidays. The attached Kronos report shows that Dana has taken 11 sick days since November 20, 2019, nine of which were taken on a Friday, Monday, or [the] day before [a] holiday." In addition, the performance appraisal included other criticisms of my performance, specifically stating that there was a "lack of follow up when items are delegated to other staff members," that social media accounts were not being regularly maintained, and that I was not "taking a leadership role in overseeing foundation and public funding efforts." The performance appraisal did not include any suggestions for areas of improvement, benchmarks I could meet, or a timetable for improvements.

25.     I wrote back to Schatz the next day, April 21. I pointed out that "everything you have cited as evidence of errors or poor performance or intentional defrauding on my part – with the exception of four days I was out of the office (please see below) – occurred after I submitted an Americans with Disabilities Act (ADA) request for workplace accommodations to Lori Zeno on December 23, 2019." I included a written explanation for each of my paid time off ("PTO") days used to Schatz. I reminded him I had struggled with QD's timekeeping application and that he had offered to correct my inaccurate timesheets. In addition, I noted that several of the criticisms directed at me actually related to the work of others, specifically Eric Paykert, who is

8

senior to me and was extensively involved in the rebranding project before I started my job. In addition, I explained that the criticisms of my development work were misleading and did not reflect my actual conversations and interactions with Schatz.

26.     On April 22, I asked Schatz if I could be given a Performance Improvement Plan ("PIP"), or other documentation with specific goals and benchmarks I could meet to improve my performance. Schatz said no.

27.     Zeno's retaliation became more explicit. On April 23, 2020, Zeno forwarded me an email from Brooklyn Defender Services promoting their advocacy work during the closure of non-essential businesses in New York City and the COVID-19 pandemic. Zeno copied several members of QD leadership, including Schatz, Powell, Paykert, Marissa Bernowitz, Lisa Saltzman, and Kirlyn Joseph, in an email attacking my job performance. She wrote,

> WOW..........This is something!! And it is all the same stuff that Queens Defenders has been doing!!!! ( ACCEPT THE PART OF GETTING A GRANT FROM NYC COVID-19 Response and Impact Fund) YET, NOONE KNOWS ABOUT THAT.......................
> GREAT COMMUNICATION ON OUR PART.
> WHEN DO YOU THINK WE WILL STEP OUR PROGRAM UP????? HOPEFULLY, BEFORE THE PANDEMIC IS OVER.
> I understanding that we are working from home, and I have been consistently told that one can have the same productivity from home as they can in the office, but clearly, it is not working for us. Unless of course, we are NOT WORKING from home, or certainly NOT WORKING ENOUGH HOURS from home!
> I have cc'd a group of people, in the hopes that they can provide you with whatever you will need. REACH OUT TO THEM AND ASK THEM!

28.     The same day, I replied to Zeno that I had been working on a similar newsletter with Schatz, and that I thought the newsletter from Brooklyn Defender Services could provide some ideas we could incorporate. I also emailed QD employees to ask for anecdotes and information to include in the newsletter.

29.     Zeno then replied further attacking me while copying the same members of QD leadership. In addition, Zeno asserted that I was not doing my job while working from home. She wrote, "Please let Brian know what you have been doing from home, and how many hours a day you are working. So far, I have seen very little."

30.     On April 26, 2020, I wrote an email to Zeno documenting the work I had done since March when the office closed and noted that Zeno had turned down interview requests from major publications including New York Magazine which would have led to the press coverage she was seeking.

31.     In late April, I began experiencing an unusual cluster of symptoms that my doctors later determined were likely due to the novel coronavirus, COVID-19. These symptoms included a Urinary Tract Infection ("UTI"), intermittent fever, dry cough, sore throat, fatigue, cold sweats, chills, brain fog, confusion, chest discomfort, and shortness of breath.

32.     On SATURDAY May 9, Zeno demanded that all QD employees attend an in-person meeting in Far Rockaway on May 11, 2020 in defiance of New York's shelter at home order. Afraid of losing my job, I attended the in-person meeting, where Zeno insisted on hugging everyone and did not wear a mask in crowded room of approximately 20 or more employees. The meeting was to discuss the opening of a "Community Justice Center" in Far Rockaway (the "Far Rockaway Center" or the "Center").

33.     A week after attending the in-person meeting in Far Rockaway, I was diagnosed with pneumonia, though I continued to work from home to the best of my ability, given my illness.

34.     Zeno continued her retaliation. On May 22, Zeno's executive assistant, Marissa Bernowitz, sent an email announcing a press conference promoting the Far Rockaway

Center, taking over my job responsibilities without notifying me. On May 23, I emailed Zeno describing my efforts in promoting the opening of the new Center.

35.     In late May, QD hired a social media coordinator without informing or involving me or Schatz. Zeno announced the hire in an email to QD leadership on May 29, 2020. Maintaining QD's social media accounts is explicitly one of my job duties which has now been entirely transferred to the new employee.

36.     In late May, I began taking off work due to my continuing COVID-19 symptoms, which included intermittent fevers and a persistent cough. As a result, I went on short-term disability and Family and Medical Leave Act ("FMLA") leave beginning June 4, 2020, though I did not learn of the approval until July 9, 2020.

37.     On June 13, 2020 Zeno announced that QD was issuing bonuses to employees, as well as phone allowances due compensate employees for their increased personal phone usage. However, to date, I have not received any bonuses or pay increases.


---

DANA LONGSTREET

Sworn to before me this
_____ day of _____, 2020


---

Notary Public


11

Center, taking over my job responsibilities without notifying me. On May 23, I emailed Zeno describing my efforts in promoting the opening of the new Center.

35. In late May, QD hired a social media coordinator without informing or involving me or Schatz. Zeno announced the hire in an email to QD leadership on May 29, 2020. Maintaining QD's social media accounts is explicitly one of my job duties which has now been entirely transferred to the new employee.

36. In late May, I began taking off work due to my continuing COVID-19 symptoms, which included intermittent fevers and a persistent cough. As a result, I went on short-term disability and Family and Medical Leave Act ("FMLA") leave beginning June 4, 2020, though I did not learn of the approval until July 9, 2020.

37. On June 13, 2020 Zeno announced that QD was issuing bonuses to employees, as well as phone allowances due compensate employees for their increased personal phone usage. However, to date, I have not received any bonuses or pay increases.

_____

DANA LONGSTREET

Sworn to before me this
20th day of _____ July _____, 2020

_____
Notary Public

11

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DANA LONGSTREET,

                         Claimant,

     -against-

QUEENS DEFENDERS,

                         Respondent.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Charge No.
520-2020-04536

SUPPLEMENTAL
AFFIDAVIT

STATE OF NEW JERSEY  )
                          : ss.:
COUNTY OF ESSEX     )

           DANA LONGSTREET, being duly sworn, deposes and says:

           1.      I am the charging party in this matter. On July 20, 2020 I filed a charge ("the July 2020 Charge") with the Equal Employment Opportunity Commission against Queens Defenders ("QD"), formerly Queens Law Associates ("QLA").

           2.      I submit this supplemental affidavit in further support of my claim that QD discriminated against me because of my actual and perceived disabilities, failed to reasonably accommodate me, and retaliated against me for my protected complaints. I further submit this supplemental affidavit to add claims that QD retaliated against me for raising protected complaints of discrimination and for filing a Charge with the EEOC.

           3.      As set forth in the July 2020 Charge, QD discriminated against me on the basis of my disability and Lori Zeno ("Zeno") retaliated against me for requesting a reasonable accommodation.

4.      On July 21, 2020, I notified QD, through my attorney, that I had filed a charge of discrimination and discrimination with the EEOC.

5.      After filing my original charge in July, I learned that I have Hashimoto's disease, an autoimmune disease affecting the thyroid. I was diagnosed with Hashimoto's disease in the summer of 2019 but did not learn of the diagnosis until July 2020.

<u>QD Continues Its Retaliation Against Me After I File An EEOC Charge</u>

6.      On July 20, 2020, I filed the previous version of this charge with the EEOC. I learned soon after that on July 16, 2020, Schatz had begun his paternity leave and had created an automatic out-of-office email listing Bernowitz and Zoe Zeno as QD employees to contact while he was on paternity leave. The email did not mention me as an alternative contact during his leave.

7.      On July 20, 2020, I checked my work email for the first time in several days due to my FMLA leave and learned that Schatz had sent me a performance appraisal on July 16, 2020. Schatz wrote that the evaluation was an update to the April 20 memo, highlighted "additional examples of poor attention to detail, submitting work with errors, substandard work and a lack of timely follow through on assigned tasks during the period from April 20, 2020 – May 19, 2020." I wrote back on July 22 and highlighted the inaccuracies in Schatz's memo, along with the lack of feedback I had received during the covered time period. In addition, I reminded Schatz about the health problems I had faced in April and May.

8.      In late July, I continued to see numerous specialists in order to treat and learn the source of my health problems and ailments. From May through August, I continued to experience chest pain, shortness of breath, headaches, and numbness in my legs. My blood pressure was consistently extremely high. I also learned in late July or early August that I had been

diagnosed the previous summer with Hashimoto's disease though my doctors did not tell me of the diagnosis until the summer of 2020.

        9.      On August 3, 2020, I returned to work at QD remotely.

        10.     On September 1, 2020, Schatz emailed me to introduce Alora Sherbert ("Sherbert") as QD's new Manager of Development & Communications. I asked Schatz what Sherbert's responsibilities would be. I also expressed concern to Schatz about my exclusion from the hiring process for the new position, as I had not even been informed a new position was being created. I also expressed concern that Sherbert's responsibilities might overlap with mine.

        11.     On September 3, 2020, Zeno emailed me to forward a newsletter from another New York non-profit and to tell me I was expected to return to working in-person on Tuesday, September 8 at the Jamaica office. Zeno stated, "[t]he Jamaica office is opening next week Tuesday. I am assuming you will be in the office full time now, with the hours we had agreed upon prior to COVID." The same day, I responded to Zeno's email requesting that I return to the office and stated that I was unaware that the Jamaica staff was returning to the office full-time on September 8, 2020 and understood that there was not a definitive plan in place. I wrote that I would be also checking with my physician about returning to the office and would keep Zeno informed.

        12.     Zeno responded to my email and explained QD's reopening plan for the Jamaica office. She stated, "I am puzzled by your response that you have contacted your physician for guidance. It was my understanding that you had returned from your 90-day disability with a note from your doctor that you were eligible to return to work several weeks ago." Zeno noted the previous accommodation agreed upon in February and said she expected me in the office on Tuesday at 8:30 a.m.

3

13.    On September 4, 2020, I sent Zeno a note from my primary care doctor where she wrote, "[g]iven the continuation of [Dana Longstreet's] symptoms, I am requesting that you allow her to continue to work from home." Zeno replied, "[u]nless your doctor is saying that you are disabled because of your symptoms, and cannot return to work, I am unable to accommodate your request to work from home." She stated that, "I have made it clear to you that your job requires you to be in the office, and is not a job that can be effectively done from home." She noted the previous accommodation I was offered in February and offered unpaid medical leave as an alternative.

14.    The next day, Saturday, September 5, I responded to Zeno's email by stating that I did, in fact, have disabilities and noting the definition of a disability under New York City Human Rights Law. I wrote, "I am currently experiencing high blood pressure, tachycardia, fevers, dizziness, chest pain, headaches, joint pain, and brain fog on a regular basis. As her note reflects, my doctor has advised me that commuting could put my health at risk. I do not need medical leave because I have been successfully working from home. Please let me know whether Queens Defenders continues to refuse to accommodate my disabilities."

15.    Zeno replied, "I will not dignify your accusation with an answer! Instead, I will forward this to my Labor attorney.  Maybe you should do the same. Like I said in my earlier e-mail, unless your doctor indicates that you are UNABLE TO RETURN TO WORK because of a medical disability, when he said you were no longer disabled AND was able to return to work only a few weeks ago, I expect you to be in the office Tuesday morning at 8:30 am. Whether or not you think that you are [']successfully working from home['] is irrelevant. We have been over this before.  Your job REQUIRES that you be in the office. It is NOT sufficient for you to [']work from home['].""

4

16.     On September 6, 2020, I replied to Zeno's email, stating that "[m]y doctor [had] cleared me to return to work with the understanding that I would be working from home." I reiterated my previous points and wrote, "I will not put my health at risk by disregarding my doctor's directives. I already put my health at risk by attending an in-person meeting at your request on May 11, 2020, at the QD Far Rockaway Justice Center, at a time when such meetings were banned by New York State." I told Zeno to let me know what information she needed from my doctor and stated that I would be working from home until I was able to provide Zeno with additional information she needed to accommodate my disability.

17.     On September 8, 2020, I worked an eight-hour day from home. However, the same day, Zeno wrote that I had failed to report to the office and that my position required me to work from the office on a full-time basis. Zeno wrote that she was not approving a work from home arrangement for me and stated, "[t]herefore, I am placing you on a temporary unpaid administrative leave effective today. You may return to work once you are medically able to come to the office." I still have not been paid for September 8 or for September 7, which is a paid holiday at QD.

18.     On September 20, 2020, I provided Zeno with a second letter from my doctor disclosing my autoimmune disorder and again asking that I be permitted to work from home. I explained that my current reasonable accommodation request was necessary due my increased risks were I to be exposed to COVID-19, and that I remained able to work from home.

19.     Several days later, I learned that my office had been cleaned out even though I remained an employee of QD.

20.     On September 29, 2020, I emailed Zeno and stated that I had not received a response to my reasonable accommodation request and remained able to work from home.

5

However, unpaid administrative leave posed a financial hardship for me and my family. I wrote that, "I therefore have no choice but to end my employment with Queens Defenders, effective immediately."

21.     Zeno responded the same day, explaining that she had not had time to address my most recent email and accommodation request. She then misrepresented my email, treating it as a resignation, and wrote, "[t]his will confirm that Queens Defenders accepts your resignation effective today, September 29."

_Dana Longstreet_
DANA LONGSTREET

Sworn to before me this
29 day of _Sept._ , 2020

_Kelli C. Riley_
Notary Public

6

EEOC Form 161-B (11/2020)

# U.S. Equal Employment Opportunity Commission

## Notice of Right to Sue *(Issued on Request)*

To: **Dana Longstreet**
**320 South Harrison Street,**
**Apt. 6I**
**East Orange, NJ 07018**

From: **New York District Office**
**33 Whitehall Street**
**5th Floor**
**New York, NY 10004**

☐ *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **520-2020-04536** | **Ashraf Ahmed,**<br>**Investigator** | **(929) 506-5298** |

*(See also the additional information enclosed with this form.)*

**Notice to the Person Aggrieved:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u>** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

/AA

May 6, 2021

Enclosures(s)

**Judy A. Keenan,**
**District Director**

*(Date Issued)*